UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GUADALUPE R. BRITO, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:14-CV-419 JD |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This is a social security appeal. The plaintiff, Guadalupe R. Brito, Sr., filed an application for disability insurance benefits and supplemental security income, but the Social Security Administration denied his application. He then filed this action seeking review of the Commissioner's decision. The parties have briefed the matter and it is ripe for review. [DE 15, 20, 22]. For the following reasons, the Court reverses the decision of the Commissioner and remands this matter for further proceedings.

**I. FACTS**

On September 9, 2011, Mr. Brito applied for disability insurance and supplemental security income benefits, alleging an onset date of December 15, 2009. (R.122). He was 49 years old at the time of the ALJ's decision, and had worked as a security guard, forklift operator, and a spotter prior to his alleged disability. Mr. Brito cited diabetes, high blood pressure, and arthritis in both legs as his disabling conditions. Mr. Brito's diabetes was not well-controlled. He also experienced diabetic neuropathy, which caused tingling and numbness in his feet. That condition gradually worsened, as subsequent tests revealed diminished reflexes and feeling in Mr. Brito's legs and feet. Mr. Brito testified at the hearing that he had recently begun using a cane about four

days a week, and that he suffered falls every few weeks. His medical records from around that time indicate that Mr. Brito reported having difficulty with his balance and that he was considering giving up driving because of his difficulty feeling his feet. In addition, beginning in January 2012, Mr. Brito was hospitalized on multiple occasions for complaints of chest pain and shortness of breath, and he was diagnosed with non-obstructive coronary artery disease.

Mr. Brito's claim was denied upon initial consideration, and again upon reconsideration. He then requested and received a hearing before an Administrative Law Judge, at which he appeared without counsel. The ALJ then issued his decision on July 2, 2013. The ALJ found that Mr. Brito had severe impairments of diabetes mellitus with neuropathy, hypertension, hypercholesterolemia, non-obstructive coronary artery disease, and obesity. He next concluded that none of Mr. Brito's impairments met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ then formulated Brito's Residual Functional Capacity. Based on the testimony of a vocational expert, the ALJ found that an individual with Mr. Brito's RFC would be capable of performing Mr. Brito's past work as a security guard. Therefore, the ALJ found that Mr. Brito was not disabled. Mr. Brito requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Mr. Brito, who had by then retained counsel, timely filed a complaint in this Court seeking review of the Commissioner's decision. This Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  ANALYSIS

Disability insurance benefits and supplemental security income are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social

Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. Whether the claimant has a medically severe impairment;
>
> 3. Whether the claimant's impairment meets or equals one listed in the regulations;
>
> 4. Whether the claimant can still perform relevant past work; and
>
> 5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Brito argues that the ALJ erred in three respects. First, he argues the ALJ failed to develop a full and fair record. Second, Mr. Brito argues the ALJ failed to identify evidence that supported his determination as to Mr. Brito's RFC. Third, he argues that the ALJ improperly

assessed his credibility. The Court agrees with Mr. Brito on the first two arguments, and thus does not reach the third argument

A.  **Failure to Develop a Full and Fair Record**

In every case, an ALJ has a basic obligation to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). That duty is heightened when a claimant is unrepresented: "Where the disability benefits claimant is unassisted by counsel, the ALJ has a duty scrupulously and conscientiously to probe into, inquire of and explore for all of the relevant facts." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (internal quotations and alterations omitted). While pro se litigants are expected to provide some medical evidence to support their claim, the ALJ must "supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098. An ALJ must also "be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Thompson*, 933 F.2d at 586 (internal quotations omitted). Moreover, where the claimant appears without counsel and the ALJ fails to obtain a valid waiver of counsel, the burden shifts to the Commissioner to demonstrate that the ALJ adequately developed the record. *Skinner*, 478 F.3d 836, 842 (7th Cir. 2007); *Binion*, 13 F.3d at 245.

The parties here dispute whether the ALJ obtained a valid waiver of Mr. Brito's right to counsel, which would impact which party bears the burden as to whether the ALJ adequately developed the record. The Court need not resolve that question, though, since the result would be the same regardless of which party bears the burden. In short, the record is woefully incomplete as to what, if any, functional limitations resulted from Mr. Brito's conditions. To begin with, none of Mr. Brito's treating physicians completed a functional capacity assessment or similar

5

evaluation of Mr. Brito's functional limitations. Though the medical records contain various treatment notes, diagnoses, and test results, they do not reflect Mr. Brito's physicians' opinions as to his functional limitations (or even the lack thereof). The ALJ did not seek any further opinions or information from Mr. Brito's physicians, either.

That gap could have potentially been filled with the opinions of agency physicians. However, as the ALJ noted, the agency consultative examiner did not opine on any functional limitations in his report. Moreover, two agency physicians also reviewed Mr. Brito's file in November 2011 and March 2012 and concluded that he did not have any severe impairments, meaning they believed Mr. Brito's conditions no more than minimally affected his ability to work. Crucially, however, the ALJ disregarded both of those assessments because they were made without the benefit of subsequent medical records that indicated a worsening of Mr. Brito's condition: "These medical consultants did not have the benefit of considering the additional evidence that was available only after the reconsideration determination including subsequent medical evidence and the hearing testimony." (R. 23). Having disregarded those reports as outdated, the ALJ was left without a single medical opinion indicating how Mr. Brito's various conditions translated into any functional limitations.

The ALJ's brief questioning of Mr. Brito about his limitations during the administrative hearing was also deficient. The majority of the ALJ's questioning of Mr. Brito at the hearing was directed at determining what other medical records Mr. Brito had that were not yet a part of the record, and directing Mr. Brito to assemble and submit those records. As to Mr. Brito's functional limitations, though, all the ALJ asked was how often Mr. Brito used a cane, and whether he had ever fallen before he began using a cane. (R. 43–44). The ALJ did not ask, for example, how long Mr. Brito could walk at a time before taking a break; how many hours he

could stand or walk in a day; how much he could lift or carry; or how severe his chest pain was, how often it occurred, and whether it interfered with his ability to function. The ALJ also failed to ask if Mr. Brito experienced any side-effects from his medications that could have interfered with his ability to work. The ALJ likewise did not ask Mr. Brito about any of his activities of daily living.

As a result, the ALJ had no evidence as to the existence or extent of Mr. Brito's functional limitations, whether from a treating physician, an agency physician, Mr. Brito himself, or any other source. *Thompson*, 933 F.2d at 586–88 (finding that the ALJ failed to develop a full and fair record where he did not question the pro se claimant about his functional limitations and did not request updated medical evidence even though the claimant's condition may have worsened). This could have easily resulted in prejudice to Mr. Brito, as there was testimony and medical evidence that Mr. Brito had difficulty walking and standing due to a lack of feeling in his feet, and that this condition had been worsening. That condition could have plausibly resulted in limitations relative to the amount of time in a day that Mr. Brito could walk or stand, the use of an assistive device, or the ability to operate machinery, for example. Yet the only limitations the ALJ included in that regard was to find that Mr. Brito could perform light work, meaning he could walk or stand for up to six hours in an eight-hour workday, and that he could not climb. As noted below, the basis for those particular limitations is unclear. And more fundamentally, as also discussed below, the ALJ's failure to include this type of evidence in the record left him without any evidence upon which he could base his RFC finding. The Court therefore finds that the ALJ failed to develop a full and fair record, so the Court must remand this matter to the Commissioner for further proceedings.

**B.      Failure to Properly Assess Mr. Brito's Residual Functional Capacity**

Mr. Brito next argues that the ALJ failed to properly assess his Residual Functional Capacity. An RFC is the measure of "what an individual can still do despite his or her limitations." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). In making an RFC determination, the ALJ "must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Id.* (internal quotation and alteration omitted). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). Here, the ALJ found that Mr. Brito had the ability to perform light work—meaning he could stand and walk for up to six hours in an eight-hour day, and lift ten pounds frequently and twenty pounds occasionally—except for some other minor limitations.

Mr. Brito argues that the ALJ's decision was improper because the ALJ failed to identify the evidentiary basis for his findings and to draw a logical bridge from that evidence to the RFC. The Court finds that the resolution of this issue is largely dictated by the result of the first issue, in that having failed to adequately develop the record, the ALJ had insufficient evidence from which to build a logical bridge to his conclusion. *See Suide v. Astrue*, 371 F. App'x 684, 689–90 (7th Cir. 2010). In defending the ALJ's findings, the Commissioner argues that a claimant's RFC is a decision reserved to the agency, not to any doctor, and that an ALJ is not required to base the RFC on the opinions of one or more doctors. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). That is true, but is also beside the point. The problem here is that once the ALJ rejected the only medical opinions in the record as to Mr. Brito's physical limitations on the basis that they were outdated, and failed to adequately question Mr. Brito or to seek other evidence on that point, the ALJ was left with an evidentiary deficit that he could only fill by playing doctor.

8

*Suide*, 371 F. App'x at 689–90 (holding that the ALJ's rejection of a treating physician's opinion created an evidentiary deficit requiring remand, where other evidence in the record did not address the claimant's functional limitations); *Fly v. Colvin*, No. 3:14-cv-1840, 2015 WL 5124957, at *4 (N.D. Ind. Aug. 31, 2015) ("An ALJ is not a doctor, and his limitations must find a basis in the evidence, whether medical or non-medical.").

For example, the ALJ summarized the results of various diagnostic examinations, noting in part, "On April 15, 2013, an MRI scan of the claimant's lumbar spine showed mild diffused disc bulges, an asymmetrical disc bulge, and moderate right lateral narrowing. An electromyography (EMG) and nerve conduction study showed a moderate chronic axonal motor sensory polyneuropathy and evidence to support a left L5 bilateral foraminal encroachment." (R. 22 (internal citations omitted)). The ALJ then concluded: "Accordingly, the undersigned finds that diagnostic examinations in the record are consistent with the above residual functional capacity assessment." (*Id.*). The ALJ had no basis on which to reach such a conclusion. The significance of "an asymmetrical disc bulge, and moderate right lateral narrowing," or "a moderate chronic axonal motor sensory polyneuropathy," is not within the realm of lay knowledge. Without any medical opinion in the record translating those findings into functional limitations, the ALJ could only conclude that those findings supported the functional limitations included in the RFC by impermissibly playing doctor. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (finding that the ALJ played doctor by relying on the results of an MRI without having it reviewed by a physician).

Nor did the ALJ provide any other reasoned basis for how the evidence in the record led to the limitations included in the RFC. The ALJ's discussion of the evidence does not mention any of the limitations he ultimately included in the RFC. It is therefore unclear why the ALJ

9

concluded that Mr. Brito could perform light work, but not medium work, or why he was not further limited to sedentary work, for example. In fact, the ALJ's discussion of the evidence in the record makes it difficult to ascertain why he imposed any limitations at all. He notes that Mr. Brito was "unremarkably treated" for certain conditions, and that diagnostic examinations revealed "mild findings" or "no more than moderate findings." (R. 21–23). Yet, the ALJ found that Mr. Brito suffered from multiple severe impairments, including diabetes mellitus with neuropathy, hypertension, hypercholesterolemia, non-obstructive coronary artery disease, and obesity. By characterizing those as severe impairments, the ALJ found that they had "more than a minimal effect on the claimant's ability to do basic physical or mental work activities." (R. 17). Nothing in the ALJ's discussion permits the Court to trace the ALJ's reasoning from the existence of those conditions to the limitations they impose on Mr. Brito's ability to work, though. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (finding that the ALJ erred where she concluded that the claimant could perform light work but failed to cite evidence or explain how she reached that conclusion). Therefore, the Court finds that the ALJ failed to build the requisite logical bridge from the evidence to his conclusion, and that remand is necessary for this reason, too. Finally, having concluded that remand is required for those two reasons, the Court declines to address Mr. Brito's third argument, which contests the ALJ's credibility analysis, as that issue may be affected by any additional evidence or testimony that is offered on remand.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner denying Mr. Brito's claim for benefits is REVERSED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

10

SO ORDERED.

ENTERED: March 21, 2016

                                      /s/ JON E. DEGUILIO
                             Judge
                             United States District Court